IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID SEACHRIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:14-cv-01177-STA-egb |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff David Seachrist filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act (the "Act") and an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on February 27, 2013. On April 19, 2013, the ALJ denied the claim. The Appeals Council denied the request for review. Thus, the decision became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

1

cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on October 22, 1967, and alleges that he became disabled on February 16, 2011. In his Disability Report, Plaintiff alleged disability due to major depression, an anxiety disorder, nerve problems, a learning disability, and stomach problems caused by h. pylori. He has past relevant work as a janitor.

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The ALJ made the following findings: (1) Plaintiff met the insured status requirements through September 2012; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: generalized anxiety disorder, panic disorder, dysthymia, and avoidant personality disorder; but he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform work at all exertional levels with the following non-exertional limitations: he has the ability to understand, remember, and carry out and make judgments only on simple work-related decisions and can occasionally interact with supervisors and co-workers; he is unable to perform work involving interaction with the public, production rate paced work (quota assembly line work), and changing work procedures or requirements; (5) Plaintiff is able to perform his past relevant work as a janitor/cleaner; in the alternative, there are other jobs in the national economy that he can perform (6) Plaintiff was defined as a younger individual on the alleged onset date and has a limited education; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the Grids") as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, even if he cannot perform his past relevant work; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

---

[8] R. 16 – 23.

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10] The initial burden of going forward is on the claimant to show that he or she is disabled from engaging in his or her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

    1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

    2. An individual who does not have a severe impairment will not be found to be disabled.

    3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

    4. An individual who can perform work that he has done in the past will not be found to be disabled.

    5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the forth step

---

[9] 42 U.S.C. § 423(d)(1).

[10] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[11] *Id.*

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

and, alternatively to the fifth step, with a finding that Plaintiff can perform his past relevant work, but, even if he cannot, there is a substantial number of jobs in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. He specifically argues that the ALJ erred at step three of the sequential process and in the weighing of the medical opinion evidence and his credibility. Plaintiff's arguments are not persuasive.

Plaintiff first argues that the ALJ erred at step three when he found that he did not have an impairment or combination of impairments that medically equal any listing section, specifically Listings 12.04 (affective disorders), § 12.05 (mental retardation), and § 12.06 (anxiety disorder). The ALJ found that Plaintiff has severe impairments of generalized anxiety disorder, panic disorder, dysthymia, and avoidant personality disorder. However, the ALJ also found that Plaintiff did not have an impairment or combination of impairments that medically met any listing section. When a claimant alleges that his impairment meets or equals a listed impairment, he must present specific medical findings that satisfy the criteria of the particular listing.[14] Not only must a claimant show that he has a diagnosed condition found in the listings, he must also provide medical records documenting that it meets all the requirements of the applicable listing.[15]

The above cited listings provide in relevant part:

---

[13] 20 C.F.R. § 404.1520(a).

[14] *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[15] *Hale v. Secretary*, 816 F.2d 1078, 1083 (6th Cir. 1987) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)); *accord Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify" (emphasis in original)).

12.04. Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:
    1. Depressive syndrome characterized by at least four of the following:
    a. Anhedonia or pervasive loss of interest in almost all activities; or
    b. Appetite disturbance with change in weight; or
    c. Sleep disturbance; or
    d. Psychomotor agitation or retardation; or
    e. Decreased energy; or
    f. Feelings of guilt or worthlessness; or
    g. Difficulty concentrating or thinking; or
    h. Thoughts of suicide; or
    i. Hallucinations, delusions, or paranoid thinking; . . .

AND

B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence or pace; or
    4. Repeated episodes of decompensation each of extended duration . . .

12.05. Mental Retardation: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (before age 22) . . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
    . . .
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
    . . .
12.06. Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

>A. Medically documented findings of at least one of the following:
>>1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>>a. Motor tension; or
>>b. Autonomic hyperactivity; or
>>c. Apprehensive expectation; or
>>d. Vigilance and scanning; or
>>2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
>>3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
>>4. Recurrent obsessions or compulsions which are a source of marked distress; or
>>5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
>
>AND
>
>B. Resulting in at least two of the following:
>
>>1. Marked restriction of activities of daily living; or
>>2. Marked difficulties in maintaining social functioning; or
>>3. Marked difficulties in maintaining concentration, persistence or pace; or
>>4. Repeated episodes of decompensation each of extended duration . . .[16]

Plaintiff contends that the ALJ failed to discuss whether his impairments met the requirements for Listing § 12.05 and erred in his evaluation of the "B" criteria of Listings § 12.04 and § 12.06. No doctor has opined that Plaintiff's impairments meet or equal any of the listings, including the state agency physicians who considered this issue. Therefore, Plaintiff has not met his burden of producing medical evidence that his impairments meet the requirements of any listed impairment.

---

[16] 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04, § 12.05, & § 12.06.

Dr. Dennis Wilson, a psychological consultative examiner, found that Plaintiff had a verbal IQ of 100 and a full scale IQ of 74 but did not make a finding regarding his performance IQ.[17] Plaintiff argues that Dr. Wilson's finding that he had a working memory of 69 and a processing speed of 62 demonstrate that he satisfied the requirements of Listing 12.05. On the contrary, Plaintiff has presented no evidence that a working memory score of 69 or a processing speed of 62 equate to an IQ in the mentally retarded range, nor has he presented other evidence of an IQ score in the required range. Thus, the ALJ did not err in failing to discuss Listing § 12.05 when the evidence did not show that Plaintiff's impairments closely matched the requirements of this listing.[18]

As for Listings § 12.04 and § 12.06, Plaintiff reasons that, because Dr. Wilson found that he had moderate to marked limitations in his ability to interact with others and adapt to changes rather than precisely placing his limitations in one of the five scale categories listed in 20 C.F.R. § 416.920a, Dr. Wilson did not follow the regulations, thus necessitating a remand. Plaintiff is in error.

Section 416.920a describes the technique that an ALJ must use in evaluating the severity of a mental impairment. Pursuant to §§ 416.920a(e)(1) and (4), this procedure is to be documented by a state agency medical or psychological consultant at the initial and reconsideration stages and by the ALJ at the hearing level. In the present case, the ALJ had before him an opinion of a medical advisor to assess the severity of Plaintiff's mental

---

[17] R. 287.

[18] *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (The Sixth Circuit has rejected a heightened articulation standard noting "the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis'").

8

impairments and any resulting functional limitations, and the ALJ conducted the assessment required by § 416.920a(e). While the ALJ considered Dr. Wilson's findings, he explained that the record revealed that Plaintiff had only moderate limitations under the "B" criteria of the relevant listings. Additionally, the "B" criteria of Listings § 12.04 and § 12.06 were not met because Plaintiff's activities of daily living, such as his ability to grocery shop, demonstrate that he could carry out a superficial level of social contacts and only had moderate limitations in social functioning.[19] Also, Plaintiff experienced no episodes of decompensation for an extended duration and had only moderate difficulties with concentration persistence, and pace, which was confirmed by the opinion of psychologist Horace Edwards, Ph.D.[20]

Because Plaintiff did not meet his burden of demonstrating that his impairments met all the requirements of Listings § 12.04, § 12.05, and § 12.06, the ALJ did not err at step three.

Next, Plaintiff complains of the ALJ's credibility findings. The ALJ rather than this Court "evaluate[s] the credibility of witnesses, including that of the claimant."[21] A claimant's credibility comes into question when his "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence.[22] To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[23] This Court is

---

[19] R. 182-83.

[20] R. 376.

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[22] *Id.*

[23] *Id.*

required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."[24] However, the ALJ's credibility finding "must find support in the record."[25]

Here, the Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the severity of his alleged symptoms, and the record as a whole does not indicate that his condition was of disabling severity. In making his credibility determination, the ALJ considered the lack of objective medical evidence to support Plaintiff's complaints of disability, improvement in his mental health symptoms with treatment, activities of daily living, lack of medication side effects, and inconsistencies between his statements and other evidence of record.

Plaintiff asserts that his allegations were supported by Lauralei Russell, a nurse practitioner at Pathways, and Dr. Wilson. Plaintiff started mental health treatment at Pathways in March 2011 with NP Russell. Shortly after his treatment began, Plaintiff demonstrated good thought content, behavior, and orientation.[26] Although Plaintiff reported a history of shoulder pain during his examination by Dr. Wilson,[27] Plaintiff showed no need for sustained treatment related to his shoulders or other musculoskeletal complaints.[28] When an individual's impairments are improved with medication and/or treatment, a finding of disability is not

---

[24] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[25] *Id.*

[26] R. 311, 314, 320-39, 413-14.

[27] R. 282, 356-58.

[28] R. 274, 386.

10

supported.[29] Additionally, Plaintiff's complaints were inconsistent with his daily activities. Plaintiff could prepare meals, clean, do laundry, mow the lawn, grocery shop, drive, take walks, and help his cousin lay carpet once or twice a month.[30]

Plaintiff complains that the ALJ did not adequately discuss the factors listed in Social Security Ruling 96-7p in evaluating his credibility. SSR 96-7p provides factors that may be considered in evaluating credibility, including medical signs and laboratory findings; diagnosis and prognosis contained in medical opinions; and statements and reports from the claimant and the medical sources. SSR 96-7p also provides other factors, such as daily activities; location, duration, and frequency of symptoms; factors precipitating and aggravating the symptoms; type, dosage, effectiveness, and side effects of medication; treatment other than medication; measures used by the claimant to relieve symptoms; and any other factors concerning the claimant's functional limitations. As discussed above, the ALJ looked at several factors, including the lack of significant clinical and diagnostic findings, the medical source opinions, and Plaintiff's activities. Accordingly, this argument is without merit, and the ALJ's credibility finding is upheld.

Plaintiff also argues that the ALJ failed to properly weigh the medical source opinions. Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory

---

[29] *See Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 763 (6th Cir. 2014) (citing *Hardaway v. Secretary*, 823 F.2d 922, 927 (6th Cir. 1987) (evidence that medical issues can be improved when using prescribed drugs supports denial of disability benefits)).

[30] R. 181-82, 283.

11

diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[31]

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."[32] Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[33]

Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[34] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[35] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[36] Opinions from non-

---

[31] 20 C.F.R. § 404.1527(c)(2).

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

[33] Soc. Sec. Rul. 96–2P.

[34] 20 C.F.R. § 404.1502, 404.1527(c)(1).

[35] *Id.* § 404.1502, 404.1527(c)(2).

[36] Soc. Sec. Rul. No. 96–6p at *2.

treating sources are not assessed for controlling weight. Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[37] State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[38]

Plaintiff asserts that the ALJ failed to properly weigh the opinion of NP Russell. NP Russell provided a letter stating that, due to Plaintiff's lack of education and inability to control his anxiety and depression, his "prognosis for work was zero."[39] Nurse practitioners are not acceptable medical sources for authoritative opinions on diagnoses and limitations. The ALJ found that NP Russell's opinion was inconsistent with the treatment records from Pathways and with the less restrictive opinions of licensed psychologists, including Dr. Edwards, Andrew Phay, Ph.D., and Dr. Wilson.[40] The ALJ may give less weight to the opinion of a mental healthcare provider who is not a doctor.[41]

Plaintiff also asserts that the ALJ improperly weighed Dr. Wilson's opinion. Dr. Wilson's opinion was consistent with Dr. Edwards' opinion except that Dr. Wilson found Plaintiff moderately limited in his ability to interact with the public and markedly limited in his

---

[37] 20 C.F.R. § 404.1527(c).

[38] *See* 20 C.F.R. § 404.1527(e)(2)(i).

[39] R. 433.

[40] R. 293-309, 363-65, 382.

[41] *See Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750 (6th Cir. 2013) ("Finally, the ALJ reasonably gave limited weight to the testimony and adult function report of Ms. Orta because Orta is a peer support counselor, not a doctor or therapist, and her conclusion that Culp is disabled is a determination reserved to the Commissioner.").

ability to adapt and Dr. Edwards found Plaintiff markedly limited in his ability to interact with the public and moderately limited in his ability to adapt.[42] Plaintiff testified that his social anxiety and resulting panic attacks were his primary limiting conditions, which supported the marked limitation in the ability to interact with the public as opined by Dr. Edwards.[43] Also, Plaintiff's wide range of daily activities indicates Plaintiff had no more than a moderate limitation in his ability to adapt, which was also consistent with Dr. Edwards' opinions.[44]

Substantial evidence supports the weight given to the medical evidence and opinions in the record and the evaluation of Plaintiff's residual functional capacity. The ALJ properly determined that Plaintiff could perform work at all exertional levels with certain non-exertional limitations, and Plaintiff has failed to show that he is otherwise more limited.

In response to hypothetical questions that included the ALJ's assessment of Plaintiff's residual functional capacity, the vocational expert testified that Plaintiff could perform his past relevant work. The vocational expert also identified jobs, such as cleaner, grounds maintenance worker, and housekeeper, that an individual with Plaintiff's limitations could perform.[45] Plaintiff failed to prove that he had limitations other than those in the residual functional capacity and hypothetical questions. Thus, the ALJ properly relied on the vocational expert's testimony to find that Plaintiff could perform other work.[46]

---

[42] R. 289, 381.

[43] R. 46, 381.

[44] R. 181-82, 283, 381.

[45] R. 48-49.

[46] *See Foster*, 279 F.3d at 356-57 (finding that substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question). As noted above, the ALJ found both that Plaintiff could perform his past relevant work and that

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

                                              **s/ S. Thomas Anderson**
                                              S. THOMAS ANDERSON
                                              CHIEF UNITED STATES DISTRICT JUDGE

                                              Date: June 21, 2017.

---

there was other work that exists in substantial numbers in the national economy that Plaintiff can perform.